UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80928-CIV-MARRA
(Consolidated Action: Lead Case)

RICHARD COTROMANO, et al., all on behalf of
themselves and all others similarly situated,

**9:13-cv-80928 Marra/Reinhart**

      Plaintiffs,

vs.

UNITED TECHNOLOGIES CORPORATION,
Pratt & Whitney Group, A Connecticut Corporation,
and PALM BEACH AGGREGATES, LLC, a
Florida Corporation,

      Defendants.

_____/

    JOSEPH ADINOLFE, etc., et al.,

**9:10-cv-80840 Marra/Reinhart**

      Plaintiffs,

vs.

UNITED TECHNOLOGIES, UTC Group,
a Connecticut Corporation,

      Defendant.

_____/

**PRATT & WHITNEY'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................2

I.   PLAINTIFFS' MOTION DEPENDS ON THE INCORRECT ASSERTION
     THAT THEIR EXPERTS ARE UNREBUTTED AND MUST BE TAKEN AS
     TRUE ........................................................................................................................2

II.  PLAINTIFFS' MOTION FAILS BECAUSE THEY CANNOT PROVE PRATT
     & WHITNEY CAUSED A SINGLE CANCER IN THE CANCER CLUSTER ..............4

     A.   Plaintiffs' Disavowal of Proving Any "Physical Contamination" Warrants
          Entry of Judgment Against Them ............................................................................5

     B.   Plaintiffs Lack the Evidence Required to Prove Pratt & Whitney Caused
          the Cancer Cluster ................................................................................................6

III. PLAINTIFFS' "TRUCKING THEORY" IS SPECULATIVE AND
     UNFOUNDED ........................................................................................................10

IV.  PLAINTIFFS HAVE NO ADMISSIBLE EVIDENCE LINKING THE CANCER
     CLUSTER TO ANY ALLEGED "STIGMA" AT THEIR PROPERTIES ......................12

     A.   Kilpatrick Has No Causation Opinion ..................................................................13

     B.   Plaintiffs' Own Lay Testimony is Both Insufficient and Inadmissible ................14

V.   PLAINTIFFS' ARGUMENTS REGARDING PRATT & WHITNEY'S
     "AFFIRMATIVE DEFENSES" ARE MISGUIDED AND INCORRECT ....................17

CONCLUSION..................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Am. Family Ins. Co.*,
    350 F. Supp. 3d 1295 (M.D. Ga. 2018) ......................................................... 14, 15

*Chapman v. Procter & Gamble Distrib., LLC*,
    766 F.3d 1296 (11th Cir. 2014) .................................................................... 6, 7

*Cotromano v. United Techs. Corp.*,
    2018 WL 2047468 (S.D. Fla. May 2, 2018) ...................................................... 11

*Cotromano v. United Techs. Corp.*,
    7 F. Supp. 3d 1253 (S.D. Fla. 2014) .............................................................. 18

*Finestone v. Fla. Power & Light Co.*,
    2006 WL 267330 (S.D. Fla. Jan. 6, 2006) ...................................................... 6

*Florida Power & Light Co. v. Jennings*,
    518 So. 2d 895 (Fla. 1987) ...................................................................... 16, 17

*Hand v. Cargill Fertilizer, Inc.*,
    157 F. App'x 230 (11th Cir. 2005) ............................................................... 19

*Munoz v. Orr*,
    200 F.3d 291 (5th Cir. 2000) ..................................................................... 11

*Norris v. Baxter Healthcare Corp.*,
    397 F.3d 878 (10th Cir. 2005) ................................................................... 10

*Roberts v. Fla. Power & Light Co.*,
    146 F.3d 1305 (11th Cir. 1998) ............................................................... 18, 19

*Sabal Trail Transmission, LLC v. 3.921 Acres of Land in Lake County Fla.*,
    2020 WL 355874 (11th Cir. Jan. 22, 2020) .................................................... 14

*Small v. Amgen, Inc.*,
    723 F. App'x 722 (11th Cir. 2018) ............................................................... 6

*South Grande View Dev. Co. v. City of Alabaster*,
    2017 U.S. Dist. LEXIS 193666 (N.D. Ala. Nov. 22, 2017) ................................. 14

*United States ex rel. TVA v. An Easement & Right-of-Way Over 6.09 Acres of Land*,
    140 F. Supp. 3d 1218 (N.D. Ala. 2015) ....................................................... 14, 15

*Williams v. Davis*,
    974 So. 2d 1052 (Fla. 2007)......................................................................................... 7

*Williams v. Mosaic Fertilizer, LLC*,
    889 F.3d 1239 (11th Cir. 2018) ......................................................................... 6, 14, 15


**Statutes**

42 U.S.C. § 2014........................................................................................................... 18


**Other Authorities**

Appraisal Standards Board, *Advisory Opinion* 9: *The Appraisal of Real Property That May Be Impacted By Environmental Contamination* (AO-9) ............................................. 15

Appraisal Institute, *Guide Note* 6: *Consideration of Hazardous Substances in the Appraisal Process* ..................................................................................................................... 15


**Rules**

10 C.F.R. § 20.1301 ..................................................................................................... 19

Fed. R. Evid. 701 .............................................................................................. 14, 15, 16

Fed. R. Evid. 702 ........................................................................................................ 15

As set forth in Pratt & Whitney's motion for summary judgment (DE 498), Plaintiffs do not have sufficient evidence for a reasonable jury to find in their favor. This is true even with Kilpatrick's testimony, as Pratt & Whitney articulated three independent, dispositive grounds for summary judgment that do not rely on Kilpatrick's exclusion. *First*, and most fundamentally, Plaintiffs lack the requisite evidence to show that Pratt & Whitney caused any of the cancers in the purported cancer cluster. DE 498 at 5-7, 10; DE 514 at 2-4. *Second*, Plaintiffs do not have the individualized evidence the Court held is necessary to substantiate their claims. DE 498 at 10-14. *Third*, Plaintiffs do not have any admissible evidence that the cancer cluster caused their alleged lost property value, that they have suffered any injury in fact, or on the amount of their alleged economic damages. DE 498 at 6-9; DE 514 at 5-10. Their motion does not grapple with these failures. Instead, Plaintiffs' motion paints a distorted picture of the relevant facts and law that cannot withstand even basic scrutiny. Plaintiffs accordingly fail, on several levels, to create a genuine issue of fact for trial. The Court should not only deny Plaintiffs' motion, it should grant judgment for Pratt & Whitney.

Plaintiff's motion is premised on the false assertion that their experts are unrebutted. And yet, even with that assertion, the best they can do is cobble together "inferences" and "implications," rather than actual proof. For example, in seeking to prove Pratt & Whitney caused the cancer cluster, Plaintiffs' motion rests on an "inference" offered by their "data scientist" (Dominici) who (a) does no statistical analysis herself, (b) relies on the inadmissible statistical analyses done by others (Smith), and (c) offers no opinion on the necessary predicates to her so-called inference—contaminant transport, toxicology, and medical causation.

Moreover, Plaintiffs now say their claims do *not* rest on showing actual contamination. They and Kilpatrick reiterated that stance dozens of times at the recent *Daubert* hearing, stating that this is "*not* a trespass case" but rather one of alleged "informational stigma." *E.g.*, Ex. 1 at 181:21-182:5 (1/13/20 *Daubert* Hr'g Tr.) (emphasis added). Plaintiffs' new position cannot be reconciled with their core claim that Pratt & Whitney caused a cancer cluster in the Acreage. It is logically impossible to prove Pratt & Whitney actually caused the cancer cluster—much less a single cancer within the cluster—without showing that Pratt & Whitney caused environmental contamination in the Acreage, and specifically at the properties of the actual cancer cluster victims. Plaintiffs cannot make any such showing, as set forth in Pratt & Whitney's motion; to the contrary, Plaintiffs now admit that they will not even *attempt* it.

1

**ARGUMENT**

Plaintiffs are not entitled to summary judgment on liability or on Pratt & Whitney's affirmative defenses for several reasons. *First*, Plaintiffs' entire motion depends on the false premise that their experts are unrebutted. They are not. *Second*, Plaintiffs lack the required evidence to prove Pratt & Whitney caused even one cancer in the cluster, much less the alleged cancer cluster itself. *Third*, Plaintiffs' theory of a "trucking" conspiracy to dump Pratt & Whitney soil in the Acreage is speculative and unsupported by admissible evidence. *Fourth*, Plaintiffs do not have any admissible evidence that the cancer cluster caused a diminution in the market value of their homes, or that they have suffered any economic damages. *Fifth*, Plaintiffs' arguments regarding Pratt & Whitney's defenses are misguided and incorrect—especially their contention that the Price-Anderson Act does not preempt their claims.

**I.   PLAINTIFFS' MOTION DEPENDS ON THE INCORRECT ASSERTION THAT THEIR EXPERTS ARE UNREBUTTED AND MUST BE TAKEN AS TRUE**

Plaintiffs' motion is premised on the erroneous claim that the opinions of their experts are "established" and "unrebutted." *E.g.*, DE 552 at 1. That is incorrect.

As an initial matter, Plaintiffs' liability experts' opinions are not admissible and thus cannot support a motion for summary judgment. Pratt & Whitney has filed *Daubert* motions to exclude all of Plaintiffs' predicate expert opinions due to their unreliability and lack of fit to this case. DE 544 (Smith), DE 545 (Sawyer & Franke), DE 548 (Moore), DE 549 (Kaltofen). Accordingly, their experts cannot simply be taken as "established," as Plaintiffs would have it. *E.g.*, DE 552 at 1 (Plaintiffs' Motion). Pratt & Whitney has not filed a separate *Daubert* motion to exclude Dominici—the "data scientist" on whom Plaintiffs rely heavily—but her opinions are expressly dependent on, and derivative of, Plaintiffs' primary experts. Ex. 2 at 39:12-16, 58:25-59:10 (5/4/18 Dominici Tr.). If any one of Pratt & Whitney's *Daubert* motions to exclude those experts is granted, Dominici's analysis falls.

Moreover, Plaintiffs' experts *have been rebutted*. Pratt & Whitney has disclosed rebuttal experts to every expert incorporated and relied upon by Plaintiffs here. Plaintiffs are well aware of this fact. Indeed, throughout this case and the related injury cases, Plaintiffs have (a) had the opportunity to depose Pratt & Whitney's experts, and have done so multiple times in some instances, (b) cross-examined them in Court during the weeklong 2018 class certification hearing *in this case*, (c) moved to exclude them under *Daubert*, *see* DE 438 at 41 (denying several of

Plaintiffs' *Daubert* motions), and (d) provided responsive rebuttal reports from their own experts, *see* DE 487 (expert disclosure).  Yet Plaintiffs' motion relies on the incorrect assumption that *all* of their liability experts' opinions are somehow "unrebutted" and therefore should be accepted at face value.  That premise is absurd, especially considering that many of Pratt & Whitney's responsive experts had been disclosed to these very same Plaintiffs in this very same case on these very same claims.

Plaintiffs' argument to the contrary depends on the claim that the Court's scheduling order required Pratt & Whitney to formally "disclose" (yet again) the numerous experts who had already been timely disclosed to Plaintiffs in these and related cases.  *See* DE 551 at 2, ¶ 9.  Plaintiffs' interpretation of the scheduling order is inconsistent with both the history and text of the order.  The scheduling order was the result of briefing regarding whether *any* additional discovery was necessary after class certification was denied.  In its submission, Pratt & Whitney made clear it was relying on its already-disclosed experts in arguing that discovery should not be reopened.  DE 443 at 3.  Plaintiffs' corresponding submission requested a limited re-opening of discovery, proposing deadlines only for the disclosure of "individual property value" opinions and a narrow class of "updates of any opinions related to any additional inspection results"— reflecting their understanding that the parties had completed all other expert discovery in this case and the related personal injury litigation.  DE 444 at 4; DE 456 (same).  Plaintiffs further told the Court that they "do not see a <u>need</u> for additional discovery" except for the "limited instances relat[ing] to individual damage claims."  DE 465 at 2.

In light of the parties' acknowledgment that much of the relevant expert discovery had already been conducted, the Court's scheduling order provided that all "previously-disclosed experts" are part of the case, and only required the disclosure of "new" or "updated" opinions.  DE 475 at 3.  The *Cotromano* Plaintiffs disclosed only one new opinion: that of Kilpatrick, which was timely rebutted by Pratt & Whitney's expert Roddewig.  Plaintiffs separately identified other "previously-disclosed" experts in a disclosure filing.  DE 487.  None of these experts produced a new or updated report; instead, Plaintiffs relied on the previously disclosed reports (in this case or the related personal injury cases) to which Pratt & Whitney had already produced responsive experts.  Accordingly, because Plaintiffs disclosed no "new" or "updated"

reports other than Kilpatrick's, Pratt & Whitney had no obligation to serve or disclose new reports in response.[1]

Plaintiffs cannot seriously claim surprise at the fact that Pratt & Whitney challenges their previously-disclosed experts. Pratt & Whitney has filed rebuttal reports to those experts in both this case and the related personal injury cases. And Plaintiffs have already had the opportunity to depose and reply to each of Pratt & Whitney's responsive experts.[2] In fact, Plaintiffs' expert disclosure in this case (DE 487) includes rebuttal reports that their experts issued in response to Pratt & Whitney's responsive expert reports in the related personal injury cases—a fact that only further illustrates that Plaintiffs were fully aware that Pratt & Whitney has rebutted each and every one of their experts.

In view of Pratt & Whitney's *Daubert* motions, its prior expert disclosures, and the operative scheduling order, the Court should reject Plaintiffs' position that their expert opinions be taken as "established" and "unrebutted." Considering that Plaintiffs' motion turns on this untenable argument—after all, they use the word "unrebutted" twenty-nine times in their brief—it must be denied.

## II. PLAINTIFFS' MOTION FAILS BECAUSE THEY CANNOT PROVE PRATT & WHITNEY CAUSED A SINGLE CANCER IN THE CANCER CLUSTER

Plaintiffs' claim is for property value loss "arising from" the "cancer cluster's designation on August 28, 2009." DE 552 at 17. Their attempt to hold Pratt & Whitney liable for those

---

[1] Notably, the *Adinolfe* Plaintiffs read the scheduling order the same way, as they disclosed only a new report from Kilpatrick and did not "re-disclose" their "previously-disclosed" experts. The *Cotromano* Plaintiffs' strained reading of the scheduling order would mean that the *only* expert the *Adinolfe* Plaintiffs have disclosed in support of their claims is Kilpatrick.

[2] Pratt & Whitney's disclosures include at least the expert reports identified in Exhibit 3, which lists all the experts, their reports, and the attendant examinations of those experts taken in the *Cotromano* cases. To the extent Plaintiffs argue there was somehow an obligation to formally re-disclose these experts in response to their summary disclosure of previously disclosed experts, Pratt & Whitney does so now and Plaintiffs can claim no prejudice. Indeed, Plaintiffs have had the opportunity to depose these experts and have responded to them with rebuttal reports of their own. Notably, Pratt & Whitney relied on many of these experts in opposing class certification, DE 320, in seeking to exclude Plaintiffs' experts, *e.g.*, DE 244, and in moving for summary judgment in the related cases, *e.g.*, DE 328 (10-cv-80883, *Santiago*). Plaintiffs cannot show any prejudice even if Pratt & Whitney's disclosures are considered untimely, given that they have had these responsive reports for months (in some cases years) and have already had the opportunity to depose those experts.

alleged damages depends on proving Pratt & Whitney *actually caused* the cancer cluster. But Plaintiffs lack the specific cause evidence required to prove Pratt & Whitney caused even a *single* cancer in the alleged cancer cluster, much less that Pratt & Whitney caused the cluster itself. For this reason, Plaintiffs' motion fails and Pratt & Whitney is entitled to summary judgment. *See* DE 498 at 5-7, 10; DE 514 at 2-4.

### A. Plaintiffs' Disavowal of Proving Any "Physical Contamination" Warrants Entry of Judgment Against Them

Plaintiffs' claims hinge on proving Pratt & Whitney actually caused the cancer cluster declared by the Florida Department of Health. It follows that Plaintiffs need to show actual contamination at levels that are sufficient to cause brain cancer. Specifically, Plaintiffs must demonstrate actual contamination due to an actionable wrong by Pratt & Whitney (not alleged transport by unaffiliated others), at discrete locations (*e.g.*, the brain cancer cluster patients' homes), at levels sufficient to cause (and that actually did cause) the three pediatric, female brain cancers that make up the cancer cluster designated by the FDOH in 2010.

Not only do Plaintiffs fail to establish this fundamental causal link with any evidence, as discussed below, but they outright assert that they claim only a loss from "stigma" and do not need to "show physical contamination" at all. DE 552 at 10; *id.* at 16 (disavowing claims of "actual physical injury"). Consistent with this position, Plaintiffs and Kilpatrick repeated dozens of times at the recent *Daubert* hearing that the claim was based only on "informational stigma" and was "not a trespass case." *E.g.*, Ex. 1 at 229:10-11. Plaintiffs thus admit that they will not (and cannot) prove that contamination from Pratt & Whitney caused the cancer cluster. This failure of proof alone warrants the entry of judgment for Pratt & Whitney because it defeats a necessary element of Plaintiffs' claims—namely causation.

Even setting aside Plaintiffs' inability to establish that Pratt & Whitney caused the cancer cluster, their decision to disavow showing actual contamination undermines their ability to establish a viable stigma claim. As the Court ruled previously, asserting a "stigma" claim that is untethered to any actual contamination—whether at or proximate to Plaintiffs' properties— simply is not actionable. *See* DE 438 at 21 ("[T]he claims are not actionable unless the polluter's alleged [contamination] created dangerous dose exposures, measured in terms of risk to human life, to persons residing within specified geographical zones.").

**B.      Plaintiffs Lack the Evidence Required to Prove Pratt & Whitney Caused the Cancer Cluster**

Plaintiffs have no evidence that Pratt & Whitney in fact caused the cancer cluster.  As set forth in Pratt & Whitney's summary judgment motion, it is undisputed Plaintiffs lack any medical causation opinion that Pratt & Whitney caused even one of the cancers that made up the cluster.  They instead cite to a purported "inference" from a data scientist—who has no medical opinions at all, and instead relies on a review of Plaintiffs' other expert reports—that Pratt & Whitney caused the cancer cluster.  Plaintiffs' inability to create a genuine issue of fact on this central tenet of their case is dispositive and warrants the entry of judgment for Pratt & Whitney.

***Plaintiffs lack specific cause evidence.***  On February 1, 2010, the FDOH confirmed a statistically elevated rate of ***pediatric female*** brain cancers in the area from 2005 to 2007.  DE 241-2.  This finding was based on identifying "three cases among females" age 0 to 19 in the Acreage that were diagnosed during the relevant period.  *Id*.  The FDOH has never publicly identified a cancer cluster in the Acreage beyond that described in its February 1, 2010 notice.

Plaintiffs allege Pratt & Whitney caused the FDOH's publicly-declared cancer cluster, and that the resulting declaration of a cancer cluster caused the "informational stigma" on which the entire claim is based.  DE 552 at 6.  Plaintiffs accordingly must show, through reliable expert analysis, that contamination from Pratt & Whitney was sufficient to, and *in fact* did, cause the brain tumors in the three patients in the cluster.  *See Chapman v. Procter & Gamble Distrib*., *LLC*, 766 F.3d 1296, 1307 (11th Cir. 2014) ("Recognizing all substances potentially can be toxic, . . . the relationship between dose and effect (dose-response relationship) is the hallmark of basic toxicology," and "is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect.") (citation omitted); *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1245 n.2 (11th Cir. 2018) ("[T]o establish specific causation, Dr. Mink would still have to reliably calculate whether Ms. Williams was exposed to enough of the toxin to cause the alleged injury . . .") (citation omitted); *Small v. Amgen, Inc.*, 723 F. App'x 722, 726 (11th Cir. 2018) (requiring expert testimony on medical causation); *Finestone v. Fla. Power & Light Co.*, 2006 WL 267330, at *8 (S.D. Fla. Jan. 6, 2006) ("With regard to causation, in a toxic tort situation, Plaintiffs must show both general causation (that radiation causes cancer) and specific causation to the individual plaintiffs (whether plaintiffs were exposed to the toxin,

whether plaintiffs were exposed to enough of the toxin to cause the alleged injury, and whether the toxin in fact caused the injury.").[3]

It also stands to reason that Plaintiffs must additionally prove specific causation of Garrett Dunsford's brain tumor, given that Kilpatrick's analysis now claims the stigma began in early 2008 in the wake of Mr. Dunsford's diagnosis. DE 496-1 ¶ 6 (Kilpatrick report discussing Dunsford diagnosis in January 2008); DE 511 at 9 (Plaintiffs relying on testimony from the Dunsfords regarding "market leakage in the first quarter of 2008"). Indeed, under Plaintiffs' new theory that the Dunsford diagnosis was the precipitating event in 2008 that caused the alleged stigma, they must prove through reliable expert testimony that Pratt & Whitney *in fact* caused Mr. Dunsford's cancer. *See, e.g.*, *Chapman*, 766 F.3d at 1307.

Yet, after several years of fact and expert discovery, Plaintiffs do not point to a single specific cause opinion from any expert that Pratt & Whitney caused any of the cancers in the cluster. To be clear: Plaintiffs have *no* expert who opines on dose, exposure, or specific medical causation for any of the three pediatric females that made up the cancer cluster declared by the FDOH. Nor do they have any specific cause opinion regarding Mr. Dunsford's tumor. *See, e.g.*, DE 545 at 4-5 (*Daubert* motion explaining that Plaintiffs' experts Sawyer and Franke only address specific causation for three individuals—Ms. Santiago, Mr. Baratta, and Mr. Wenderoth—none of whom were part of the cancer cluster identified by the FDOH); DE 498 at 5 & DE 514 at 3-4 (discussing that none of Plaintiffs' experts—including Perry, Smith, Kaltofen, Moore, and Dominici—offer specific cause medical opinions).[4]

---

[3] Plaintiffs cite *Williams v. Davis*, 974 So. 2d 1052 (Fla. 2007) to argue that they need only show a "reasonably close causal connection" to prevail. DE 552 at 2. But *Williams* was a case about whether a homeowner's maintenance of foliage contributed to a car accident. It did not involve the complex evidence required to prove causation in a toxic tort, much less one alleged to involve cancer or the underlying cancer cluster that is the source of Plaintiffs' claims. 974 So. 2d at 1054. The case did not define the scope of what "reasonably close" means, nor did it minimize the applicable standard for *proximate causation* Pratt & Whitney cited in its summary judgment motion and here. That standard is defined in *Chapman* and other Eleventh Circuit precedents. *See supra*; DE 514 at 3 (discussing *Chapman*).

[4] Indeed, Plaintiffs do not have admissible testimony as to the cause of cancer in *anyone* in the Acreage *ever*, whether they were part of the cluster or not. Plaintiffs refer to their experts' opinions on the cause of Ms. Santiago's brain tumor. DE 552 at 9. These opinions are unreliable, speculative, and inadmissible under *Chapman*, *see* DE 328 at 16-20 (10-cv-80883).

Nor do any of Plaintiffs' experts offer an opinion on transport of radioactive materials *to the three cancer cluster homes,* much less that any alleged transport occurred in sufficient time to cause brain tumors in the 2005-2007 timeframe, as would be necessary to prove Pratt & Whitney is responsible for any cancer cluster patient's alleged exposure or dose. DE 550-87 (4/20/18 Moore Tr.) at 461:16-23 (Moore agreeing he has no opinion or evidence that soil from Pratt & Whitney went to any home in particular). Thus, even if Plaintiffs could prove as a matter of medical causation that the three cancer cluster patients' tumors were caused by exposure to contaminated soil (they cannot), they have no basis to claim that the soil originated at Pratt & Whitney or was present due to any wrongdoing by Pratt & Whitney.

This is the cardinal problem of Plaintiffs' entire case: they cannot prove Pratt & Whitney caused the cancer cluster without proving it caused the *individual cancers in it*. As a result of this unmitigated failure of causation evidence, Plaintiffs are not entitled to summary judgment. Rather, as detailed in its prior papers (DE 498 & 514), Pratt & Whitney is entitled to judgment given Plaintiffs' clear lack of evidence on this fundamental issue.

**Dominici *does not save Plaintiffs' claims from summary judgment.*** Without expert evidence on the cause of any cancer in the FDOH cancer cluster, Plaintiffs pin their causation case on "Dr. Dominici's ***inference*** that UTC's contamination of the Acreage, in turn, caused the cancer cluster." DE 552 at 8 (emphasis added). Dominici's opinion does not carry their burden.

*First*, by Plaintiffs' own description, Dominici's opinion is merely an "inference." *Id*. Dominici does not have any original opinion or analysis regarding the cluster; her report is entirely derivative of, and assumes as true, the flawed analyses put forward by other experts. Ex. 2 at 26:18-21, 49:8-20; DE 552 at 8-11 (explaining Dominici's reliance on the other experts). Dominici admitted that her opinions depend on the accuracy and reliability of Plaintiffs' experts (such as Smith and Moore), none of whom offer any opinion that Pratt & Whitney caused cancer or the cancer cluster. Ex. 2 at 39:12-16; DE 498 at 5; DE 514 at 3-4. And despite the fact that Dominici's "inference" depends on Plaintiffs' other experts, she admits that her knowledge about their analysis comes not from "their actual reports or testimony," but rather "information that

---

Moreover, Ms. Santiago was not part of the FDOH-declared cancer cluster because her diagnosis occurred in 2009. DE 407 at 2 (10-cv-80883) (granting summary judgment in *Santiago*).

[she] received from plaintiffs' counsel." Ex 2 at 51:20-52:16, 49:8-50:4, 50:14-51:6.[5]
Regardless, the underlying opinions of Plaintiffs' other experts are (1) inadequate to prove that
Pratt & Whitney caused any cancers in the cluster, and (2) inadmissible for the reasons stated in
Pratt & Whitney's pending *Daubert* motions.  *See* DE 544 (Smith), DE 545 (Sawyer & Franke),
DE 548 (Moore), DE 549 (Kaltofen).  As such, Dominici's "inference" necessarily fails.

*Second*, the only basis Plaintiffs cite for Dominici's "inference" of actual causation of
any cancer is Ms. Santiago's brain tumor.[6]  But, as noted above, Ms. Santiago was not part of the
cancer cluster the FDOH declared.  DE 241-2 (FDOH cancer cluster based on three pediatric
female brain tumors in 2005-2007); DE 407 at 2 (10-cv-80883) (Santiago diagnosis in November
2009).  Accordingly, even if Plaintiffs could show that Pratt & Whitney caused Ms. Santiago's
tumor (which they cannot do, *see* DE 328 (10-cv-80883, *Santiago*)), that would not provide any
basis—inferential or otherwise—for saying Pratt & Whitney caused the cancer cluster.

*Third*, Dominici's opinion demonstrates Plaintiffs' inability to prove their claim about
causation of the cancer cluster.  Dominici admits that any such assessment of causation "requires
consideration of biological, toxicological, epidemiological, and statistical evidence."  DE 552 at
6.  As set forth in Pratt & Whitney's summary judgment motion, Plaintiffs fail on every level.

---

[5] Plaintiffs refer to "ionizing radiation" as the "primary environmental risk factor" for brain
cancer, DE 552 at 9, without acknowledging the *level* of radiation required to create the risk.
They once again cite Perry for the notion that "low dose" radiation is connected to brain cancer,
but do not explain what he meant by "low dose."  *Id.*  Perry admitted at the class certification
hearing that, given the background levels of radiation in the Acreage, it would take over 1
million years of cumulative exposure to reach the "low dose" he was talking about—1.4 Gray of
radiation.  DE 427-5 (1/11/18 Hr'g Tr.) at 86:10-87:12.  Indeed, if the background levels of
radiation found in the Acreage caused brain tumors, there would be cancer clusters everywhere.
Notably, Perry admitted that none of the literature he cited to support his claim that ionizing
radiation was an environmental risk factor for brain cancer involved exposure through soil as
Plaintiffs claim here.  *Id.* at 83:13-18.

[6] Plaintiffs suggest that it is "unrebutted" that the Thorium-230 detection Plaintiffs claim to have
found in Ms. Santiago's tumor must have come from Pratt & Whitney.  DE 552 at 6-8.  This
claim is not only unrebutted; it is utterly baseless.  Pratt & Whitney never used or emitted
Thorium-230.  *See* DE 356 at 3-4, DE 359 ¶¶ 10-15 (10-cv-80883) (*Santiago*).  Rather, there is
only evidence that Pratt & Whitney used Thorium-232 in documented, and licensed quantities
that themselves were not ever shipped in soil to the Acreage.  DE 359 ¶¶ 10-14 (10-cv-80883).
And the record is clear, based on the admission of Plaintiffs' own expert Kaltofen, that you can
"never, ever" get Thorium-230 from Thorium-232.  DE 427-5 (1/11/18 Hr'g Tr. ) at 101:25-
102:5.

They have no biological or toxicological expert who provides any tissue analysis, specific medical cause opinion, or toxicology analysis for any of the cancers in the cluster.  *See supra*. Nor do they have any statistical evidence that demonstrates the cause of any cancer in the cluster. Smith disavowed any such opinion, admitting "I have not stated that there was a common cause," DE 496-11 at 51:3-16, and Dominici provided no statistical analysis of her own, *see supra*.  Finally, Plaintiffs lack any epidemiological opinion supporting their claims.  The only epidemiological study in this case is the one performed by the FDOH in 2010, which found no association between living in the Acreage and contracting brain cancer.  DE 319-9 at 1, 8.  The FDOH actually found the opposite, concluding from the data that duration of residence in the Acreage is *negatively* correlated with the incidence of cancer.[7]  *Id.* at 7.

Plaintiffs' claims for alleged property diminution depend on establishing that Pratt & Whitney caused the purported cancer cluster the FDOH publicly declared in 2010.  Plaintiffs have a profound failure of proof demonstrated by the complete absence of any evidence of specific causation for the three pediatric female cancers in the cluster.  Their attempt to remedy this shortcoming by relying on Dominici's inference similarly fails.  The Court should deny Plaintiffs' motion for summary judgment and grant Pratt & Whitney's motion.

## III.    PLAINTIFFS' "TRUCKING THEORY" IS SPECULATIVE AND UNFOUNDED

The only basis Plaintiffs provide for the "inference" that alleged contamination from Pratt & Whitney actually caused the cancer cluster is their entirely unsubstantiated soil transport, or "trucking," theory.  The theory is not supported by any admissible evidence.  As an initial matter, Plaintiffs' expert Brian Moore is the one who sponsors it, and his testimony should be excluded for the reasons stated in Pratt & Whitney's *Daubert* motion.  DE 548.  That motion was fully briefed, and at the class certification hearing the Court heard Moore's testimony, which depends on ignoring both the actual testimony of the truck drivers and the "obvious alternative explanation[]" for the presence of naturally occurring radioactive material ("NORM") in soil.

---

[7] Plaintiffs cite the Tenth Circuit's statement in *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 887 (10th Cir. 2005) that "where epidemiology is available, it cannot be ignored."  DE 552 at 4. Indeed, in *Norris*, the court granted summary judgment for the defense after excluding two experts for ignoring the available epidemiological evidence, which did not support an association between silicone breast implants and immune system diseases.  397 F.3d at 886-87.  *Norris* is accordingly analogous to this case, as Plaintiffs' theory and experts' opinions cannot be reconciled with the results of the FDOH's epidemiological study—which "cannot be ignored."

*See Cotromano v. United Techs. Corp.*, 2018 WL 2047468, at *14 (S.D. Fla. May 2, 2018) (citing *Munoz v. Orr*, 200 F.3d 291 (5th Cir. 2000)).  Plaintiffs' motion indeed relies on the inference that soil contaminated with radioactive materials *must* have come from Pratt & Whitney.  DE 552 at 7.  But that inference is unwarranted, and the entire trucking theory fails, making the matter not only not undisputed, but indisputably baseless and unsupported.  There is no admissible evidence of "soil transport" from Pratt & Whitney to the Acreage, much less to the three cancer cluster homes specifically, as Moore admitted.  *See supra*; *see also* DE 359 ¶¶ 22-34 (10-cv-80883, *Santiago*).

Moreover, there is no evidence of radiological contamination from Pratt & Whitney in the Acreage.  Plaintiffs cite purported detections of Thorium-230, Thorium-232, Strontium-90, and Cesium-137 in the Acreage.  DE 552 at 5.  But testing by the Florida Department of Environmental Protection and by Plaintiffs revealed only expected detections of NORM and man-made radionuclides at background levels.  DE 256-1 at 2, 31 (FDEP Report that concluded: "Radionuclide levels throughout The Acreage were comparable to general background conditions in Florida."); DE 319-17 (9/12/16 Kaltofen Tr.) at 223:3-226:4, 246:16-247:18; DE 319-1 (5/11/16 Frazier Rep.) at 16-21; DE 319-2 (9/16/16 Frazier Rep.) at 6-11.

In any event, there is no evidentiary basis to claim that any of these materials Plaintiffs claim to have found in the Acreage could have or did originate at Pratt & Whitney.  As discussed above, Pratt & Whitney's limited, documented quantities of Thorium-232 were shipped elsewhere, and Pratt & Whitney did not use or possess Thorium-230—which you can "never, ever" get from Thorium-232.  *See supra* n.6.  And while Plaintiffs continue to blame Pratt & Whitney for their detections of Cesium-137 and Strontium-90—which are expected to be found in Florida due to worldwide nuclear fallout—it is undisputed that Pratt & Whitney used only miniscule, regulated, *sealed* sources of those radionuclides that could not possibly explain their presence in soil samples.  DE 359 ¶ 19 (10-cv-80883, *Santiago*); DE 427-5 at 99:7-11 (1/11/18 Kaltofen Hr'g Tr.).  Thus, in relying on claims about Cesium-137 and Strontium-90, Plaintiffs must be again advancing the "speculative" suggestion that the requisite "fission-producing activity may have occurred at the Pratt & Whitney site," which the Court previously gave "no weight."  *See* DE 438 at 10 n.9.  Finally, as noted in Plaintiffs' own discovery responses, defendant Palm Beach Aggregates is a possible alternative source for any NORM and man-made radioactive materials found in the area, as it conducted mining operations at its location adjacent

11

to the Acreage, and was a "major source of 'fill'" in the area.  DE 438 at 9 n.8; DE 419-8 at 4 (Gayahpersad Interrogatory Resp.); DE 359 ¶ 27 (10-cv-80883, *Santiago*).

Accordingly, there is no basis for drawing the inference Plaintiffs urge—that radioactive contamination could not have come from "anywhere but UTC."  DE 552 at 7.  There certainly is no evidence of actual transport to the Acreage of any soil from Pratt & Whitney, much less (a) transport that could be attributed to conduct of Pratt & Whitney or (b) transport of soil that could be shown to include radioactive materials above background levels.  The direct evidence refutes this theory, as sworn testimony from the truck drivers, employees at the Magnum facility, and others confirms that (a) no soil was transported from Pratt & Whitney to the Acreage and (b) the fill dirt hauled to Acreage homes for house pad construction did not come from Pratt & Whitney, but rather had multiple other sources.  *See* DE 359  ¶¶ 22-27, 30, 32 (10-cv-80883, *Santiago*) (citing testimony and documents from first-hand witnesses).  Plaintiffs have no actual evidence of a trucking conspiracy to divert soil from Pratt & Whitney to the Acreage, which is why they cannot point to a single property that allegedly received fill from Pratt & Whitney.

There is also no admissible evidence that an advertisement for the sale of fill dirt along the Beeline Highway (but not "from" or "at" Pratt & Whitney, as Plaintiffs suggest, DE 552 at 8; DE 551 at 5) involved soil from Pratt & Whitney or even had any association to Pratt & Whitney.  *See* DE 359 ¶ 31 (10-cv-80883, *Santiago*).  At bottom, there is no admissible evidence of transport of even *one truckload* of soil from Pratt & Whitney to the Acreage, much less evidence from which a jury could conclude that contaminated soil was transported (through any wrongdoing of Pratt & Whitney) in sufficient quantities and to the relevant, specific locations to create any exposure for the children who make up the cancer cluster.

## IV.   PLAINTIFFS HAVE NO ADMISSIBLE EVIDENCE LINKING THE CANCER CLUSTER TO ANY ALLEGED "STIGMA" AT THEIR PROPERTIES

Plaintiffs also fail to establish a causal link between what they claim caused their damages—the FDOH's cancer cluster designation—and any value loss at their properties. Plaintiffs assert that they have undisputed evidence that the cancer cluster diminished the value of their homes.  DE 552 at 10.  Plaintiffs purport to have two bases for this assertion: Kilpatrick's opinions, and their own lay testimony.  But Kilpatrick gives no such causation opinion, and the Plaintiffs lack admissible lay testimony on the fact or cause of their alleged "stigma" damages.

### A.    Kilpatrick Has No Causation Opinion

Kilpatrick does not claim that the stigma he purports to measure was *caused* by the cancer cluster designation.  In fact, Kilpatrick does not provide any opinion on causation at all.  As set forth in Pratt & Whitney's pending motion for summary judgment, Kilpatrick purports to measure "stigma" by examining sales prices, but he does *not* offer an opinion as to what might be causing the alleged price effects he notes in his trend analysis.  *E.g.*, DE 498 at 3, 8-9 (citing testimony).  In their response to Pratt & Whitney's motion, Plaintiffs admitted Kilpatrick's "role" does not "include causation."  DE 510 at 2; *id.* (acknowledging that Kilpatrick did not prove "that the cluster caused the diminished value he discerns)."

Plaintiffs sing a different tune now.  They assert that "Kilpatrick's particular conclusion that the cancer cluster diminished the value of Acreage homes is not rebutted."  DE 552 at 13.  But Kilpatrick does not offer that "conclusion" at all.  He has not ascertained whether the stigma he purports to measure was caused by "the cancer cluster announcement, the impact of contamination, or something else."  DE 496-3 at 496:8-19; Ex 1 at 179:15-180:6 (1/13/20 *Daubert* Hr'g Tr.) (admitting he has not parsed causal factors but rather has "let the data speak for itself").  Kilpatrick has similarly explained that he is only "examining prices," but "not peeling layers of the onion to figure out *why*" prices moved as he claims they did.  DE 496-4 at 273:10-16 (emphasis added); *id.* at 323:3-9 (he does not "look at why prices are affected").  Kilpatrick in fact just opines some "thing" affected prices, but he does not "know what the thing is" because he is "just measuring it."  *Id.* at 267:9-21.[8]  Even if the cancer cluster designation did impact property values (as Plaintiffs argue) starting in August 2009, Kilpatrick's analysis does not show it.  The unidentified "thing" that Kilpatrick purports to measure occurred in early 2008—well-over a year before the FDOH's cancer cluster announcement.  DE 496-4 at 267:9-21.

---

[8] And the opinions Kilpatrick *does* offer are certainly not "unrebutted."  Pratt & Whitney's expert Roddewig reviewed Kilpatrick's analysis and concluded that he "has not reliably demonstrated diminution in value arising from environmental stigma in the Acreage, much less at any specific Plaintiff property."  Ex. 4 at 4 (Roddewig Report).  Plaintiffs have not challenged Roddewig's testimony or qualifications.

## B.       Plaintiffs' Own Lay Testimony is Both Insufficient and Inadmissible

Plaintiffs also cite their own lay testimony as having "established the fact of diminution of their property values." DE 552 at 10.  But as set forth in Pratt & Whitney's summary judgment papers, Plaintiffs' proposed lay testimony is both insufficient and inadmissible to establish whether or why their specific properties experienced a drop in value.  DE 514 at 6-9.

As an initial matter, Plaintiffs cannot testify as to the fact or cause of their claimed property value diminution.  While an owner of property may "testify regarding its value," such testimony must be based on personal knowledge and cannot be speculative.  *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1250-51 (11th Cir. 2018).[9]  Regardless, testifying as to a property's *value* is a concept entirely distinct from opining on the *cause* or fact (or amount, for that matter) of alleged diminution in value due to environmental stigma.  *See Williams,* 889 F.3d at 1250; *Anderson v. Am. Family Ins. Co.*, 350 F. Supp. 3d 1295, 1303 & n.5 (M.D. Ga. 2018) (refusing to allow plaintiff to testify "that stigma caused the value of his home to decrease" and noting that such testimony would violate Rule 701); *see* DE 514 at 6-8 (citing cases).

Plaintiffs cite no case to the contrary.  They cite out-of-jurisdiction cases involving the value of jewelry, a vehicle, and spur lines—none of which allowed lay testimony on the fact or cause of environmental "stigma." DE 552 at 12.  They also cite *South Grande View Dev. Co. v. City of Alabaster*, 2017 U.S. Dist. LEXIS 193666, at *4-5 (N.D. Ala. Nov. 22, 2017).  DE 552 at 12.  But in *South Grande*, the owner did not testify as to "diminution in value" and the case did not involve environmental contamination or stigma; rather, the case involved a taking, with the issue being the value of *what was taken*.  2017 U.S. Dist. LEXIS 193666, at *4–5.  Finally, Plaintiffs cite *United States ex rel. TVA v. An Easement & Right-of-Way Over 6.09 Acres of Land*, 140 F. Supp. 3d 1218, 1240 (N.D. Ala. 2015), to argue that "the owner-competence principle" does not conflict with Federal Rule of Evidence 701, which allows lay testimony

---

[9] The Eleventh Circuit recently reaffirmed this standard in *Sabal Trail Transmission, LLC v. 3.921 Acres of Land in Lake County Fla.*, 2020 WL 355874 (11th Cir. Jan. 22, 2020).  In *Sabal Trail*, a pipeline easement case, the court allowed a property owner to testify as to the value of a parcel with a pipeline running across it.  *Id.* at *3.  The court explained that allowing the property owner to testify was not an abuse of discretion because her testimony was based on her personal knowledge and "experience selling 25 similar lots" over a 25-year period.  *Id.* at *6.  None of the Plaintiffs here can claim any such extensive experience selling real estate—much less selling "similar lots" to the ones at issue in this case.

based on personal knowledge so long as it is not based on scientific or technical concepts.  DE 552 at 13.  Of course, that argument begs the question because when (as here) an owner's testimony on value *is* based "upon technical or specialized knowledge, . . . it crosses into expert testimony for purposes of Rule 702 and cannot be admitted under Rule 701(c)."  *6.09 Acres*, 140 F. Supp. 3d at 1242.[10]

The record in this case demonstrates that testimony as to the fact or cause of an environmental stigma requires the kind of specialized and technical knowledge that lay witnesses are not qualified to provide.  *Williams,* 889 F.3d at 1250.  Kilpatrick confirmed that "specialized expertise is required" to "determin[e] the impaired values" of properties affected by contamination in accordance with the appraisal guidance set by the Uniform Standards of Professional Appraisal Practice.  DE 241-9 at 82.  The appraisal guidance involves complex, specialized factors to consider and techniques to employ in assessing the effects of environmental contamination on real property.  *See* DE 369-1 at 4-5 (Jackson Direct Test.) (discussing his authorship of the well-established *Advisory Opinion* 9: *The Appraisal of Real Property That May Be Impacted By Environmental Contamination,* and *Guide Note* 6: *Consideration of Hazardous Substances in the Appraisal Process).*  Even Plaintiffs' own counsel, in open Court, sought to obtain Pratt & Whitney's expert's agreement that "the fact of damage to the value of real estate is measurable by generally accepted methodologies *within the area of expertise of appraiser*."  DE 427-3 (1/9/18 Hr'g Tr.) at 7:6-14 (emphasis added).

In any event, Plaintiffs do not point to any testimony where they have offered an opinion on the "value" of their properties—either now, or when they sold.[11]  By their own description, Plaintiffs have only vaguely testified to "reduced demand" in the Acreage generally.  DE 551 ¶¶ 61, 3.  Nor have these Plaintiffs provided an analysis of diminution in value stemming from

---

[10] Pratt & Whitney made this same point in its summary judgment reply.  DE 514 at 7 (citing *Anderson*, 350 F. Supp. 3d at 1303 & n.5).  Plaintiffs attempt to distract from the *Anderson* holding by citing the court's discussion of a Georgia rule of evidence.  DE 552 at 11-12.  But in affirming the inadmissibility of lay testimony on the fact and cause of stigma, *Anderson* clarified that Federal Rule of Evidence 701 was the governing rule.  350 F. Supp. 3d at 1303 & n.5.

[11] For example, Paulette DeCarlo admitted that she "couldn't quantify" what her house might be worth.  DE 550-6 at 106:20-107:1.  Others like Bethany Cotromano try to claim their house lost "half" its value from when she bought it due to "stigma," but then admit their approach fails to account for the intervening recession that impacted values state-wide.  DE 550-8 at 32:7-19, 40:1-5 (admitting no awareness of the "market crash" that began in 2007), 139:6-24.

stigma.  *See* DE 514 at 8.  Indeed, Plaintiffs are not offering testimony on the *value* of their properties; that is what Kilpatrick purports to do.  Rather, what Plaintiffs really want is to fill the causation hole in Kilpatrick's analysis and offer the opinion that the cancer cluster *caused* their property values to fall.  But that kind of causation testimony from lay witnesses is inadmissible as violative of Rule 701.  Moreover, there remains the stark disconnect between (a) Plaintiffs' desire to claim (in self-serving testimony) that the cancer cluster designation "caused" their diminution in value and (b) Kilpatrick's analysis, which measures whatever "thing" affected property values in early 2008, before a cancer cluster was ever publicly mentioned (and therefore before it could have had any impact on sale prices or the real estate market in the Acreage).

Nor does the testimony of local market participants support Plaintiffs' claims; instead that testimony demonstrates the lack of any linkage between the cancer cluster and sale prices.  Here, as they did in their response to Pratt & Whitney's summary judgment motion, Plaintiffs grossly mischaracterize testimony from two local realtors, Robert Barwald and Kim Foster.  DE 552 at 13; DE 551 at 10.  Plaintiffs assert that these realtors' testified that "demand for Acreage properties is still reduced" and that "recent[]" buyers have been scared off by the cancer cluster. *Id.*  In reality, Barwald testified that the Acreage market is "booming," and that in all his years as a realtor only two buyers—*ever*—have chosen to look elsewhere.  DE 509-9 at 37:14-38:8, 62:18-23.  He also testified that he has *never* seen a sale price in the Acreage reduced because of the cancer cluster.  *Id.* at 62:24-63:7.  For her part, Foster testified that she has never heard Acreage buyers or sellers voice concerns about cancer or contamination.  DE 509-10 at 100:25-101:7.  The realtor testimony is consistent with the testimony of Brent Nash, the buyer of the Newfields' property, who said that learning of the cancer cluster before looking at Acreage houses did not affect his willingness to buy Acreage property at all.[12,13]  DE 509-11 at 109:11-21, 44:20-45:11.

---

[12] The Newfields voluntarily dismissed their claim not long after Nash's deposition, admitting that their sale to a willing buyer who did not care about the cancer cluster designation "negate[d]" their claim.  Ex. 5 at 7:2-17 (10/16/19 Tracy Newfield Tr.).

[13] Plaintiffs assert that they can recover for diminution in value caused by public health fears, even if those fears are unreasonable.  DE 552 at 10 (citing *Florida Power & Light Co. v. Jennings*, 518 So. 2d 895, 898 (Fla. 1987)).  As an initial matter, *Florida Power* was a takings case involving an easement for the construction of power lines; it did not involve contamination or environmental stigma at all.  The court ruled that the evidence put on under the guise of

Plaintiffs have no admissible evidence linking the cancer cluster to the alleged "diminution in value" of their properties. Kilpatrick disavows any causation opinion, having clarified that he is simply "measuring" real estate prices. And the law does not permit Plaintiffs, as lay witnesses, to offer opinion testimony as to the cause of their alleged diminution in value due to environmental stigma.[14]

## V.   PLAINTIFFS' ARGUMENTS REGARDING PRATT & WHITNEY'S "AFFIRMATIVE DEFENSES" ARE MISGUIDED AND INCORRECT

Plaintiffs seek summary judgment on the "affirmative defenses directed to" their claims. DE 552 at 1. Plaintiffs' arguments are unavailing for several reasons.

As an initial matter, the Court need not reach this issue, for two reasons. *First*, Pratt & Whitney is entitled to summary judgment based on the utter failures of proof that pervade Plaintiffs' claims, and such judgment would render Pratt & Whitney's affirmative defenses irrelevant. *Second*, Pratt & Whitney does not carry the burden of proof for several of the defenses on which Plaintiffs focus. For example, whether the Price-Anderson Act provides the operative standard of care is a legal question Plaintiffs must address about the nature of their claims. Similarly, with regard to Pratt & Whitney's defenses under Florida Statutes § 376.313(3), it is Plaintiffs' burden to show that the actors that allegedly contaminated the Acreage are agents of Pratt & Whitney, not Pratt & Whitney's burden to prove the converse. *Cf.* DE 552 at 20. Plaintiffs

---

proving that public fear of power lines was "reasonable" was in fact "inflammatory and prejudicial." *Id.* at 899. Accordingly, the court allowed evidence of public fear, in the eminent domain context, not as a measure of damages for alleged environmental contamination, but as a factor to be considered in valuing land with power lines on it that was being "taken for a public purpose." *Id.* Moreover, *Florida Power* does not relieve Plaintiffs' burden of tying their alleged loss in property value to actionable conduct of Pratt & Whitney. *See* DE 438 at 21 ("[E]ngaging in conduct which causes a subjective, unreasonable fear of environmental danger is not actionable…"). *Florida Power* does not stand for the proposition that unreasonable fear of contamination several miles away is actionable. *Cf.* DE 552 at 10.

[14] Plaintiffs not only lack evidence on causation, they also lack evidence of economic damages. They acknowledge that they must "quantify economic damages" in some way. DE 552 at 14-15. But they have not done so. As set forth in Pratt & Whitney's summary judgment motion and further demonstrated at the recent *Daubert* hearing, Plaintiffs have no evidence of any damages, much less an amount. DE 498 at 9-15; DE 514 at 5; Ex. 1 at 175:4-177:9 (Kilpatrick agreeing he opines on property value but not economic harm to individuals, which he "would leave for somebody else").

cannot use a motion for summary judgment on Pratt & Whitney's defenses as a vehicle to duck their burden of proof.[15]

But even if the Court does reach Plaintiffs' arguments regarding Pratt & Whitney's affirmative defenses, those arguments fail on the merits. For example, the Price-Anderson Act applies to Plaintiffs' claims and renders them deficient. The gravamen of Plaintiffs' claims is that Pratt & Whitney caused property value diminution by releasing radioactive materials that caused a cancer cluster. By its plain text, the Price-Anderson Act clearly applies to Plaintiffs' claims, and defines what Plaintiffs must prove to prevail. This is because the Act defines the standard of liability for any "public liability action," defined to mean "any legal liability *arising out of or resulting from* a nuclear incident or precautionary evacuation." 42 U.S.C. §§ 2014(w), (hh) (emphasis added). A "nuclear incident" is in turn defined as any occurrence causing "bodily injury, sickness, disease, or death, . . . arising out of or resulting from radioactive" exposures. 42 U.S.C. § 2014 (q) (emphasis added).

While Plaintiffs are correct that property diminution itself is not a "nuclear incident," the crux of Plaintiffs' claim is that a release of radioactive materials *caused* "bodily injury" (cancer), which in turn *caused* their property values to fall. The Act covers "*any* legal liability arising out of" a "nuclear incident," and is not narrowly confined to covering just the "nuclear incident" itself. 42 U.S.C. §§ 2014 (w), (hh) (emphasis added). Thus, the events that Plaintiffs allege caused their injuries—radioactive exposures that caused cancer—qualify as a "nuclear incident." Plaintiffs' claims accordingly fall within the definition of a "public liability action" governed by the Act. *See, e.g.*, DE 407 at 7 (10-cv-80883) (Summary Judgment Order in *Santiago* finding that claims of "bodily injury from source material" are "preempted by federal law").[16]

As a result, Plaintiffs must show that Pratt & Whitney violated the maximum permissible dose limits established by federal regulations as required by the Price-Anderson Act. *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) ("[F]ederal safety regulations

---

[15] Plaintiffs' arguments on this point are further flawed because they are based on the faulty premise (discussed at length above) that their experts are unrebutted. *Id.*

[16] Plaintiffs also allude to an argument this Court has previously rejected, which is that the Price-Anderson Act applies only to "licensed" or indemnified operations. DE 552 at 1, 15. But as this Court has previously ruled, the Act's applicability does not turn on licensure or indemnification. DE 407 at 10 n.10 (10-cv-80883) (Summary Judgment Order in *Santiago*); *see also Cotromano v. United Techs. Corp.*, 7 F. Supp. 3d 1253, 1257-58 (S.D. Fla. 2014) (Ryskamp, J.).

conclusively establish the duty of care owed in a public liability action."); *Hand v. Cargill Fertilizer, Inc.*, 157 F. App'x 230, 233 (11th Cir. 2005) ("To state a claim of negligence for public liability injury under the Price-Anderson Act, the complaint had to allege 'exposure to radiation in excess of the permissible "dosage" levels set by federal regulation.'") (quoting *Roberts*, 146 F.3d at 1307). The dose threshold established by federal regulation is 0.1 rem per year above and beyond the dose a person receives from background sources of radiation. 10 C.F.R. § 20.1301; *see Roberts*, 146 F.3d at 1309 n.4.

Put differently, because Plaintiffs' claim is premised on the assertion that Pratt & Whitney caused the cancer cluster—the liability they claim "arises" from the alleged "nuclear incident"—Plaintiffs must show Pratt & Whitney was responsible for an impermissible dose of radiation *to the three cancer cluster members*. They cannot do so. The only evidence of dose Plaintiffs even attempt to cite comes from an inadmissible opinion that Pratt & Whitney moved to exclude related to Ms. Santiago, who was not part of the FDOH-declared cancer cluster and who is not a Plaintiff here. DE 552 at 9. Thus, Plaintiffs' failure to provide any evidence of dose to the cancer cluster patients not only prevents them from meeting their burden of showing specific causation of the cancers in the cluster, DE 498 at 5-7, DE 514 at 2-4, but also prevents them from establishing a dose to those individuals that violates the federal threshold under the Price-Anderson Act.[17]

With respect to the statute of limitations, Plaintiffs' argument again misses the point. The *Cotromano* Plaintiffs did not file their complaint until August 16, 2013. DE 552 at 17. But in sponsoring Kilpatrick's newest analysis, Plaintiffs now *argue* that there was not only actual knowledge of concerns over five years earlier, in 2008—but knowledge so widespread that by April 2008 it had already affected housing prices dramatically and uniformly across the entirety of the Acreage. *E.g.* Ex. 1 at 30:25-31:13 (Plaintiffs' counsel seeking Kilpatrick's agreement that information "permeated" the market in Q2-2008 so extensively that it created "Olympic-size problems" "uniformly . . . throughout the area"). Absent tolling under *American Pipe* based on the earlier-filed *Adinolfe* case—and there may be a substantial question as to the applicability of that doctrine given the differences between the two cases—Plaintiffs' claims would be barred by

---

[17] Separately, Plaintiffs are correct that the Act's punitive damages limitation applies only to incidents the United States has indemnified. DE 552 at 17. Pratt & Whitney does not have a claim for indemnification here.

19

the four-year statute of limitations if the court accepts April 2008 as the "trigger date" of their claim.  *E.g.*, *id.* at 9:16-10:7 (Plaintiffs' counsel stating that there are "significant differences" between the *Cotromano* and *Adinolfe* claims, including that they look at "different properties," "different points in time," and "significantly different stigmas").

## CONCLUSION

Plaintiffs lack sufficient evidence to create a genuine issue of fact on the fact, cause, or extent of their alleged damages.  The Court should deny Plaintiffs' motion and grant Pratt & Whitney's motion for summary judgment.

Dated:  February 14, 2020

Respectfully submitted,

GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: (561) 655-1980
Facsimile: (561) 655-5677
*Attorneys for Defendant United Technologies
Corporation (Pratt & Whitney)*

By: */s/ Gregor J. Schwinghammer, Jr.*
GREGOR J. SCHWINGHAMMER, JR.
Florida Bar No. 090158
gschwinghammer@gunster.com
BARBARA BOLTON LITTEN
Florida Bar No. 0091642
blitten@gunster.com

BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
SEAN W. GALLAGHER
Pro Hac Vice
sean.gallagher@bartlitbeck.com
ANDREW C. MACNALLY
Pro Hac Vice
andrew.macnally@bartlitbeck.com
DANIEL R. MCELROY
Pro Hac Vice
daniel.mcelroy@bartlitbeck.com
ALEX L. GRODEN
Pro Hac Vice
alex.groden@bartlitbeck.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 14, 2020, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

/s/ *Gregor J. Schwinghammer, Jr.*_____
GREGOR J. SCHWINGHAMMER, JR.

## SERVICE LIST

**Jack Scarola, Esq.**
**Mara Hatfield, Esq.**
Searcy Denney Scarola Barnhart
& Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Telephone: 561-686-6300
Facsimile: 561-383-9451
E-mail: jsx@searcylaw.com,
mrh@searcylaw.com,
dbotero@searcylaw.com

**Craig Randall Zobel, Esq.**
Law Offices of Craig R. Zobel, P.A.
Post Office Drawer 32065
Palm Beach Gardens, FL 33420
Telephone: 561-277-1819
Facsimile: 561- 630-9666
Email: czobel@zobellawfirm.com

**Stephen James Rapp, Esq.**
Weinberg, Wheeler, Hudgins, Gunn
& Dial, LLC
3344 Peachtree Road, Suite 2400
Atlanta, GA 30326
Telephone: 404-876-2700
Facsimile: 404-875-9433
E-Mail: srapp@wwhgd.com

**Jeffrey Louis Haberman, Esq.**
**Scott P. Schlesinger, Esq.**
Schlesinger Law Offices, P.A.
1212 SE 3rd Avenue
Fort Lauderdale, FL 33316
Telephone: 954-467-8800
Facsimile: 954-523-4803
Email:
JHaberman@schlesingerlaw.com,
scott@schlesingerlaw.com

**Bryan S. Gowdy, Esq.**
Creed & Gowdy, P.A.
865 May Street
Jacksonville, FL 32204
Telephone: 904-350-0075
Facsimile: 904-503-0441
Email: bgowdy@appellate-firm.com