UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 9:13-cv-80928 MARRA
(Consolidated Action: Lead Case)

RICHARD COTROMANO, et al., all on behalf of
themselves and all others similarly situated,
    Plaintiffs,
vs.

RAYTHEON TECHNOLOGIES CORPORATION,
et al,
    Defendants.                       **CASE NO.: 9:13-cv-80928 MARRA**
_____/

**MOTION FOR RECONSIDERATION OF ORDER DENYING THE MOTION TO ALLOW ARIE PERRY, MD TO TESTIFY IN OPEN COURT CONTEMPORANEOUS TRANSMISSION DEMONSTRATING SHEER UNAVAILABILITY OR ALTERNATIVELY, REQUEST TO CONTINUE TRIAL**

Plaintiffs, by and through undersigned counsel and pursuant to Florida Rule of Civil Procedure 43 and Local Rules 7.1 and 7.6, request the Court reconsider DE 743, Order Denying Plaintiffs' Motion to Allow Arie Perry, MD to Testify via Contemporaneous Transmission (DE 703), and as grounds therefor state as follows:

### Motion for Reconsideration

Plaintiffs respectfully request that the Court reconsider its Order and permit Dr. Perry to testify via Zoom due to COVID Pandemic restrictions on travel imposed by the University of California, San Francisco where Perry is a consulting, treating, and teaching neuropathologist. Perry requested an exception to the restrictions from the Director of the Board of Pathology and his request was denied. The motion followed. Since that motion was denied, Perry has provided the order denying the motion to his Department Chair and he has again requested permission to travel. He has again been informed that the University policy prohibits his travel to Florida to provide testimony. As clarified below, travel in violation of the policy exposes Dr. Perry to the risk of substantial adverse consequences. Consequently, if Perry is not permitted to testify via contemporaneous transmission, Plaintiffs are compelled to ask the Court to continue the trial until the COVID surge is sufficiently controlled to enable Perry to travel or until his testimony can be preserved by video deposition for presentation at trial.

While District Courts are granted broad discretion to amend prior decisions, Plaintiffs are mindful of the Court's prior statements regarding such a motion:

> "In reviewing a motion to reconsider, the Court 'will not alter a prior decision absent a showing of 'clear and obvious error" where "the interests of justice" demand correction. *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 687 F. Supp. 2d 1322, 1324 (S.D. Fla. 2009) citing *Prudential Securities, Inc. v. Emerson*, 919 F.Supp. 415, 417 (M.D.Fla.1996) quoting *American Home Assurance, Co. v. Glenn Estess & Assoc. Inc.*, 763 F.2d 1237, 1239 n. 2 (11th Cir.1985).

Here, Plaintiffs would be severely prejudiced if their expert is not permitted to testify-and he cannot testify here live. Dr. Perry is a neuropathologist whose work as a consulting pathologist at the University of California San Francisco is placed at risk by the Court's current ruling—both as an expert and as a treating doctor. His employer has declined to grant him permission to travel to testify. His ability to testify or lecture as a treating neuropathologist is predicated upon his position at that University. The basis for this motion is best articulated in the attached Declaration of Dr. Perry himself. Exhibit 1.

Order DE 743 concluded that Plaintiffs' concern regarding Perry's ability to testify live is "based on speculation; namely, that Dr. Perry may encounter flight delays on his return flight, given recent travel delays over the New Year holiday. (Jan. 4, 2022, email from Mara R. Hatfield to Sean Gallagher, DE 737-2)" and that Plaintiffs failed to demonstrate that if Perry traveled to provide testimony (an activity the Court views as separate from Perry's employment related activities) that Perry "would face severe employment ramifications." The Court found this to be so even though the motion attached a letter from the Chair of Perry's department, which stated that Perry would not be afforded an exception to University of California San Francisco's recent policy precluding travel out of state to provide testimony in this case.

The characterization of Plaintiffs' motion as having been based on speculative concerns about travel delays appears to have completely overlooked the very different basis for the denial of Dr. Perry's request expressed by UCSF. This is the expressly stated basis in the previously submitted letter of Jayanta Debnath, M.D., Distinguished Professor and Chair, UCSF Department of Pathology:

> "Unfortunately, I must deny this request because of the risk of exposure posed by your proposed travel and the University of California quarantine requirements upon your return, both of which threaten the ability of the Department to meet our clinical needs during this latest surge of the COVID-19 pandemic. Notably, just over the last few days, **UCSF has had a large increase in COVID-19 positive employees, including numerous physicians**, and we are anticipating significant workforce challenges throughout the entire month of January. **As you are a senior pathologist in the Department and the head of the division of Neuropathology, you play an essential role in the treatment of our patients at UCSF and we cannot risk your**

**prolonged absence at this time**. I am sorry that the Department and the University cannot allow this trip and hope that you can complete these tasks virtually."

There is nothing speculative about the denial of Dr. Perry's request. The denial is clearly not based on speculation but on legitimate, fact based, public health concerns. In support of the motion for reconsideration, Plaintiffs demonstrate three additional facts, facts which are either new or are only at issue due to misunderstandings that were not foreseen when Plaintiffs drafted the motion and researched the applicable precedent:

1. The policy at issue, which the Court stated was not attached to the motion, is included in the emails attached to the Defendant's response to the original email. In addition to the prior COVID policies in place before January 1, 2022, Perry had to seek permission for attending this event. 737-4, page 3: "Attendance at any out-of-state events requires department approval." Perry Declaration, Exhibit 1, Par. 4.
2. The act of providing testimony in this case is not an act "unrelated to his employment" as he, a consulting neuropathologist of UCSF's hospital, provides expert consulting services and testimony as a function of his employment, and only as authorized by his employer, UCSF, which is the billing entity for Dr. Perry's consulting services. Perry Declaration, Exhibit 1, Par. 3. As such, Perry **cannot** provide testimony at trial (as opposed to via simultaneous transmission) until the cresting epidemic subsides sufficiently to enable him to obtain authorization to travel without facing the risks and ramifications explained in his affidavit.
3. Neither he nor the Plaintiffs caused him to be unavailable as suggested in Defendant's motion.  In fact, Plaintiffs original emails to Pratt &Whitney's counsel and the travel concerns stated therein are not a separate matter from the school's policy. As noted in the original motion itself, which summarized the email correspondence attached to Pratt & Whitney's response, Perry's requests were predicated upon that policy—none of which was either within Perry or Plaintiffs' control or reasonably foreseeable.

A. **The Original Motion.**

Plaintiffs, pursuant to Rule 43(a) and the precedent cited herein, and due to the circumstances described therein, requested that the Court permit Arie Perry, MD to provide testimony in open court by contemporaneous transmission from a different location. The basis of the motion was the fact that Perry's request to travel out of state was denied by his Department Chair.  As

explained in the motion, on January 1, 2022, the University instituted a policy precluding clinical professors from traveling out of state without seeking permission from the Department chair. The policy, as noted in the motion, is predicated not merely on "historic delays in travel" but more significantly on "a cresting COVID epidemic [which] make[s] unnecessary interstate travel nearly impossible for most and completely unreasonable for clinical neuropathologists who an already strained public health sector cannot afford to have away from their clinical settings for such delays."

Perry's testimony in this matter is not an activity which is "unrelated to his employment." The motion noted that his testimony is based upon consulting diagnoses and opinions he has provided while acting as a neuropathologist of the university. The neuropathology laboratories took custody of the Plaintiffs' pathology and UCSF is paid for this work, not Perry himself.

**B. New Circumstances.**

Since the denial of that motion, Perry has again asked to be permitted to travel out of state to provide this testimony, and this request has again been denied. See Exhibit 2. While the absence of "explicit penalties" for violation of the University's policy, may mean that Dr. Perry would not be terminated for disregarding the policy, but termination or other sanctions are not excluded, regardless of whether Dr. Perry were to be personally sanctioned, unnecessarily depriving that University of his services during the existing COVID Pandemic is a significant consequence in and of itself.

As overall confirmed-case totals can vary with the amount of testing done in a state (and Florida tests less than California),[1] Dr. Perry has cited statistics of test positivity for Florida and California—in particular, the present positivity rates that were available at the Johns Hopkins COVID data hub on January 18, which were compilations of data through the previous day, January 17, 2022.[2]

---

[1] Cumulatively across the period of the pandemic, Florida's per-capita testing rate has been significantly lower than California's, despite having a significantly-higher confirmed-case rate and attendant greater need for testing. See Worldometer: Coronavirus: United States, https://www.worldometers.info/coronavirus/country/us/ (visited 1/19/22), reporting per capita coronavirus tests as 3,276,978/million for California and 2,316,426/million for Florida and per capita confirmed cases as 177,338/million for California and 242,159/million for Florida. And Florida's Governor and present Surgeon General have actually been discouraging testing despite the Omicron surge. See, e.g., Greg Fox, *DeSantis, Florida surgeon general double down on pulling back testing*, WESH 2, https://www.wesh.com/article/desantis-florida-surgeon-general-testing-debate/38669147# (Jan. 4, 2022) (last visited 1/19/22).

[2] See Exhibit 3 (composite of current, online COVID data visualizations) at 1–2.

While at a state-wide level, Florida presently threatens a significantly higher risk of COVID transmission than California, the difference is even starker between the Florida and California counties at issue—between Palm Beach County and San Francisco County:

Table 1: Statewide Comparisons

|  | California | Florida |
|---|---|---|
| Present test positivity (7-day average on 1/17/22)[3] | 17.9% | 32.9% |
| Cumulative confirmed cases per 100,000 inhabitants[4] | 18,187 | 23,475 |
| Cumulative deaths per 100,000 inhabitants[5] | 198 | 294 |
| Fully vaccinated by 1/18/22[6] | 67% | 64% |
| Present mask use (1/3/22)[7] | 63% | 38% |
| Present statewide indoor mask mandate[8] | YES | NO |
| Estimated present social distancing[9] (as of 12/23/21, reduction in mobility from pre-pandemic rate—lower is more distancing) | -22% | -8% |

---

[3] Exhibit 3, at 1–2.
[4] California: https://www.nytimes.com/interactive/2021/us/california-covid-cases.html; Florida: https://www.nytimes.com/interactive/2021/us/florida-covid-cases.html (both visited 1/19/22).
[5] Id.
[6] Id.
[7] Exhibit 3, at 5.
[8] Jonathan Franklin, *California extends its indoor mask mandate until February as omicron surge continues*, NPR.org (Jan. 5, 2022), available at https://www.npr.org/sections/coronavirus-live-updates/2022/01/05/1070811627/california-indoor-mask-mandate (last visited 1/19/22).
[9] Exhibit 3, at 5.

Table 2: Relevant County Comparisons

|  | San Francisco County | Palm Beach County |
| --- | --- | --- |
| Cumulative confirmed cases per 100,000 inhabitants[10] | 11,389 | 21,664 |
| Fully vaccinated by 1/18/22[11] | 81% | 64% |

The comparison is so much starker at the county than the state level because Southern and Central California have had much higher incidence of COVID-19 infections than Northern California, especially the San Francisco Bay area and San Francisco County, as illustrated by this graphic from the Johns Hopkins dashboard:



Exhibit 3, at 4 (case totals for and circles and arrows identifying San Francisco and Palm Beach Counties, in yellow, added to Johns Hopkins website graphic).

---

[10] California: https://www.nytimes.com/interactive/2021/us/california-covid-cases.html; Florida: https://www.nytimes.com/interactive/2021/us/florida-covid-cases.html (both visited 1/19/22).

[11] Id.

In addition to the comparative risk in Florida, and West Palm Beach, as the trip's destination, the extremely-high transmissibility of the Omicron SARS-CoV-2 variant significantly increases the risk to a multi-connection, long-distance air traveler all along his journey. Second only to measles, the present transmissibility of Omicron in the United States (the effective reproduction number, $R_e$) is estimated to be "three to five times greater than Delta's, which was 1.5 to two times greater than the original" version.[12] That is, it is 4.5 to 10 times more contagious than the original. With that variation, the well-filtered-air environment of an airline cabin is less safe from COVID transmission. This led the top medical advisor to the International Air Transport Association, which represents nearly 300 carriers, to recently report to Bloomberg that the risk of transmission on a plane is now "two to three times greater" than it had been with the Delta variant.[13]

### C. The Court's Order and Pratt & Whitney's Response misconstrue the requests in the emails between counsel as unrelated to the University policy and Perry's unavailability.

The Defendant's response to the Plaintiffs' initial motion and the Court's order suggest that Perry can testify despite the University's decision prohibiting his travel and suggest that Perry and the Plaintiffs have had some control over that decision. Also, the Defendant argued that the Plaintiffs, when choosing Perry as their expert, picked an expert whom they knew would have to travel. This is only half the issue. Plaintiffs chose the expert who, independent of any involvement by Plaintiffs or their counsel, had already provided a consulting diagnosis on one of the cancer cluster victims. A consulting neuropathologists' testimony is not divorced from his employment with the institution asked to do the consulting.

It is true that Plaintiffs asked the Defendant to agree to the relief sought in the original motion even before Perry made a request to the Department for an exception to the interstate travel ban—***Plaintiffs' motion explicitly reviewed the history of those communications***. Neither Plaintiffs nor Perry caused the expert's unavailability and neither delayed in making the requests once the need arose. Nor did the Plaintiffs attempt to rewrite the history of how this unavailability developed in their motion. Plaintiffs requested that the Defendant agree to a request that Perry provide testimony via *zoom* because of travel and COVID issues. These are

---

[12] Sumathi Reddy, *How Contagious Is Omicron? What Does That Mean for You?*, Wall Street Journal (Dec. 24, 2021), available at https://www.wsj.com/articles/how-contagious-is-omicron-what-does-that-mean-for-you-11640358001 (last visited 1/18/22).

[13] Angus Whitley, *Omicron May Double Risk of Getting Infected on Planes, IATA Says*, Bloomberg (Dec. 21, 2021), available at https://www.bloomberg.com/news/articles/2021-12-22/omicron-at-least-doubles-risk-of-getting-infected-on-a-plane (last visited 1/19/22).

the issues which precipitated the University ban. When Pratt & Whitney did not agree, Perry promptly sought approval for travel as required by the policy. The approval was denied. The motion promptly followed.

As noted in DE 737-2, page 4, Plaintiffs reached out to Defendant on January 3, 2022, noting that Perry had just requested to testify via zoom, citing COVID and related travel issues. Plaintiffs noted that this concern had arisen since December 31, 2022, when Plaintiffs withdrew a query regarding experts testifying via zoom—which at that time had been requested simply as a precaution based on larger administrative issues discussed by the parties. (See DE-727-1).

The Defendant disagreed and Perry sent Plaintiffs the policy of the school, instituted on Janaury 1, 2022, as the reason for his request. Plaintiffs forwarded this to Pratt & Whitney Counsel, and the request for their agreement was again denied. See DE 737-2, page 2.) When the Plaintiffs' request was denied, Perry sought approval to travel from the Department Chair, who was responsible for precluding travel where zoom was possible. The Chair denied the request. Plaintiffs notified the Defendant in a conference on pretrial issues and the request was again denied. Plaintiffs filed the original motion.

At page 3 of the Motion, Plaintiffs noted the history of these communications and how the unavailability evolved (just as noted on January 2-January 4 emails with S. Gallagher):

> On January 1st, 2022, UCSF announced that any out-of-state travel would require Department Chair approval. On January 2, 2021, Perry requested that he be allowed to testify via zoom due the change in policy and the issues precipitating it: historic delays in travel and a cresting COVID epidemic make unnecessary interstate travel nearly impossible for most and completely unreasonable for clinical neuropathologists who an already strained public health sector cannot afford to have away from their clinical settings for such delays. Perry's consulting diagnoses are relied upon in the treatment of neuro-cancer patients worldwide. In addition, prolonged cross-continental air travel exposes both Dr. Perry and those with whom he subsequently interacts to an increased risk of COVID infection.
>
> Plaintiff reached out to Defendant for agreement on this motion. Defendant, citing concerns about being able to effectively cross examine Perry, denied the request. The Defense noted in their concerns that this would be unfairly advantageous to the Plaintiffs as Perry would be the "only expert" permitted to appear via zoom.
>
> Before seeking permission from the Court to appear via remote transmission, Perry sought permission from his Department Chair, and it was denied. Again, the Plaintiffs reached out to the Defendant, and the <u>Defendant</u> continues to object to the request but has <u>again suggested that the proper remedy is to seek a continuance</u>. [emphasis added]

## Motion for Continuance

In the event Plaintiffs' Motion for Reconsideration is denied and Dr. Perry is not permitted to testify remotely, Plaintiffs respectfully request that the Court continue this trial until COVID-related restrictions subside sufficiently to permit Dr. Perry to testify live or until his trial testimony can be preserved by video deposition.

In their Response to Plaintiffs' initial motion on this issue [DE 737], Defendant stated as follows:

> Plaintiffs rely on Dr. Perry to establish that ionizing radiation is capable of causing brain cancer, *which is the anchor of their theory that Pratt & Whitney caused the FDOH-declared cancer cluster*.

DE 737 at p. 5-6 (emphasis supplied). While Plaintiffs may disagree with certain characterizations of Dr. Perry's prospective testimony and/or the characterization of Plaintiffs' theory of the case, it is true that Dr. Perry's testimony is key to Plaintiffs' ability to establish causation in this case. Plaintiffs therefore agree with the Defendant's previously stated position that, should the Court deny the Motion for Reconsideration, Dr. Perry's inability to attend the trail live is "reason to delay the entire trial." Id. at 4-5. Per the Graham v. Dhar case relied upon by Defendant, a motion to continue trial for a reasonable time is therefore the appropriate form of relief to seek given the circumstances. CV 1:18-00274, 2020 WL 3470507, at *1 (S.D.W. Va. June 25, 2020); [DE 737] at p. 8.

Plaintiffs have therefore attached as Exhibit 3 to this filing an affidavit from Attorney Jack Scarola which they submit establishes good cause under Local Rule 7.6 to continue the trial from its current start date of January 24, 2022. Accordingly, Plaintiffs respectfully request that the Court continue this trial unless and until the testimony of one of Plaintiffs' key expert witnesses, Dr. Perry, can be presented to the jury. After over a decade of investigating and prosecuting these complex claims, Plaintiffs deserve to have their full case in chief heard by the jury.

## Conclusion.

Since the order denying the motion, Plaintiffs have again reached out to Perry to seek an exception to the travel restrictions imposed by the University of California, San Francisco. His request has again been denied, and based on the attached documentation, if Arie Perry were to violate this policy and to travel despite the denial of his Chair for an exception to that policy, the substantial risks of adverse consequences justify a delay in the commencement of trial.

WHEREFORE, Plaintiffs request the Court reconsider its denial and allow Perry to testify via contemporaneous transmission or allow the parties to take his deposition for use at trial. Alternatively, Plaintiffs request the Court continue the case until the COVID surge, estimated to reduce within the next month, subsides sufficiently to permit the authorization of Dr. Perry's travel to Florida.

## **CONFERENCE**

Plaintiffs' counsel contacted opposing counsel with regard to this motion and have been informed that the Defendant opposes reconsideration of the order denying Plaintiffs' Motion to Allow Arie Perry, MD to Testify via Contemporaneous Transmission and now opposes the request for continuance, the alternative relief requested in this motion.

Respectfully submitted on January 19, 2022, by,

Dated: January 19, 2022  
      West Palm Beach, Florida

Respectfully Submitted,

*/s/ John Scarola*
JOHN SCAROLA, ESQ.
Florida Bar No. 169440
Email: jsx@searcylaw.com;
mmccann@searcylaw.com
Primary email: scarolateam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
561-686-6300 Telephone
561-383-9451 Fax